In re BROWNSVILLE GENERAL
HOSPITAL, INC., Debtor.

Brownsville General Hospital,
Inc., Plaintiff,

v.

Brownsville Property Corporation, Inc., West Point Health Corporation, and Brownsville Health Services Corporation, Defendants.

Bankruptcy No. 06–20253–MBM.
Adversary No. 06–2666–MBM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Jan. 17, 2008.

Lawrence C. Bolla, for the Plan Administrator of the Liquidation Plan for Brownsville General Hospital, Inc.

John P. Vetica, Jr., for Brownsville Property Corp., Inc., West Point Health Corp., and Brownsville Health Services Corp.

Paula A. Schmeck, for Thorp Reed & Armstrong.

### MEMORANDUM

M. BRUCE McCULLOUGH,
Bankruptcy Judge.

**AND NOW,** this **17th day of January, 2008,** upon consideration of (a) the Motion to Compel Production of Documents (hereafter "the Motion to Compel") filed by Brownsville General Hospital, Inc. (hereafter "BGHI"), the instant debtor and plaintiff herein (hereafter "the Debtor"), which motion is brought by the Debtor through Robert S. Bernstein in his capacity as Plan Administrator as such capacity is defined in the Debtor's Second Amended Plan of Orderly Liquidation dated December 27, 2006 (hereafter respectively "the Plan Administrator" and "the Plan"), (b) the response to such motion by the instant defendants (hereafter "the Defendants"), and (c) the Debtor's reply to such response;

and after notice and a hearing on the Debtor's Motion to Compel, which hearing was held on January 10, 2008,

it is **hereby determined that the Court shall issue an order to the effect that the Debtor's Motion to Compel is adjudicated as follows:**

(a) the documents and/or information that are the subject of the Debtor's Motion to Compel *and* which are presently possessed by Thorp Reed & Armstrong LLP (hereafter "TRA") (hereafter "the TRA Documents"), as well as the attorney-client privilege and all other privileges and protections that accompany the TRA Documents, are jointly owned by the Debtor and Brownsville Property Corporation, Inc., one of the Defendants (hereafter "BPCI");

(b) neither the Debtor nor BPCI may, as against each other, raise the attorney-client privilege with respect to any of the TRA Documents, which means that neither such party may, as to each other, so restrict access to, or preclude the use of, the TRA Documents;

(c) the Debtor and BPCI thus both have a right to immediate and unfettered access to the TRA Documents, which access, if it's effectuation cannot be consensually agreed to by the Debtor and BPCI, shall than be effected by (i) the copying of the TRA Documents so that two copies of each of the TRA Documents then exist, with one copy to be possessed by each

party, and (ii) a sharing of the cost of such copying, one-half of such cost to be borne by each party;

(d) the Debtor is the rightful, but not necessarily the sole, owner of (i) documents and/or information that were owned by BGHI prior to the Hospital Reorganization (as that term is defined at page 3 below) other than the TRA Documents (hereafter "the Other Documents"), and (ii) the attorney-client privilege and all other privileges and protections that accompany the Other Documents; and

(e) the Debtor's request for turnover of any document other than the TRA Documents is denied without prejudice.

The rationale for the Court's decision is briefly set forth below.

## I.

First with respect to the TRA Documents, the Debtor and BPCI each presently contends that it, rather than the other one or anyone else, is the sole and exclusive owner of the TRA Documents.

The TRA Documents are documents that were created by TRA for the benefit of both BGHI and BPCI in conjunction with a state-court approved corporate reorganization of BGHI, which reorganization, *inter alia*, included (a) a division of BGHI such that all realty that had previously been owned by BGHI passed into a newly-created entity named BPCI, (b) the conversion of BGHI from a nonprofit to a for-profit entity, and (c) a sale of the stock of BGHI (hereafter "the Hospital Reorganization"). The Court holds that the TRA Documents were created by TRA for such purpose, and that such documents were created for the benefit of BGHI, because the parties concede as much in their pleadings and conceded the same at the January 10, 2008 hearing. The Court holds that

TRA created such documents for BPCI's benefit as well because BPCI contended at the January 10, 2008 hearing, without any dispute then by the Debtor, that TRA represented BPCI as well with respect to the Hospital Reorganization.

Because the Court now finds that TRA represented BPCI with respect to the Hospital Reorganization, and since the TRA Documents relate to such matter, the Court holds that BPCI has an ownership right to the TRA Documents and all else that passes with them. Does the Debtor possess such an ownership right as well? The Debtor (also, of course, BGHI post-Hospital Reorganization) contends that it owns the TRA Documents and all else that passes with them because, the Debtor contends in turn, it is the same entity post-Hospital Reorganization as BGHI pre-Hospital Reorganization. BPCI argues, on the other hand, to the contrary, maintaining instead that the Debtor (i.e., BGHI post-Hospital Reorganization) is an entity that is legally distinct from BGHI pre-Hospital Reorganization.

In arguing as BPCI does, the Court presumes that BPCI acknowledges, and thus concedes, that (a) documents that effected the Hospital Reorganization indicate that BGHI pre-Hospital Reorganization was to survive such transaction, that is that such entity was to be a surviving corporation, and (b) BGHI's Pennsylvania charter number and Federal Tax Identification number did not change as a result of the Hospital Reorganization; the Court so presumes because BPCI does not dispute the foregoing and, in any event, the Court finds the foregoing to be fact regardless of BPCI's position with respect to the same.

In light of such facts, BPCI must maintain—and it appears to the Court that BPCI indeed does argue nothing more than—that the Hospital Reorganization, by

virtue of operation of law, rendered the Debtor (i.e., BGHI post-Hospital Reorganization) an entity that is legally distinct from BGHI pre-Hospital Reorganization. More particularly, BPCI argues, as the Court understands it, that (a) the Hospital Reorganization effected both a division and a conversion of BGHI, (b) divisions and conversions of nonprofit entities—which BGHI was pre-Hospital Reorganization—are governed by Chapter 59 of Pennsylvania's Nonprofit Corporation Law of 1988, (c) such Chapter 59 is entitled "Fundamental Changes," (d) a division and/or a conversion of a nonprofit entity, as a matter of law in Pennsylvania, thus constitutes a fundamental change in such entity, (e) a fundamental change in a nonprofit entity, as a matter of law in Pennsylvania, necessarily operates to essentially terminate such entity, thus distinguishing it legally from the entity that exists subsequent to such fundamental change, and (f) the division and the conversion effected by the Hospital Reorganization, and so such reorganization itself, constituted fundamental changes in BGHI so that necessarily, by operation of law, BGHI pre-Hospital Reorganization essentially terminated, thus distinguishing it legally from the Debtor (i.e., BGHI post-Hospital Reorganization).

■ Unfortunately for BPCI, fundamental changes in a nonprofit entity, such as, for instance, a division and/or a conversion (precisely like what occurred with respect to BGHI), do not legally operate in Pennsylvania so as to necessarily terminate such entity. For instance, with respect to a division of a nonprofit corporation in Pennsylvania, the existence of the dividing corporation, as a matter of law, shall cease only if, according to the plan of division, the dividing corporation is not to survive the division, *see* 15 Pa.C.S.A. § 5957(a) (Purdon's 2008); therefore, if the plan of division provides that the dividing corporation is to survive a division, then such corporation's existence, as a matter of law, does not cease upon such division, which means that such corporation pre-division cannot be distinguished from such corporation post-division. As for a conversion of a corporation in Pennsylvania from nonprofit to profit status, such conversion by itself—that is, without, for instance, an accompanying division of such corporation that effects a termination of existence—never operates, as a matter of law, to terminate the existence of such corporation, *see* 15 Pa.C.S.A. § 5966 (Purdon's 2008) (statutory provision speaks only of a singular corporation that becomes a business corporation, ceases to be a nonprofit corporation, remains liable for all liabilities that existed pre-conversion, and continues to be entitled to all assets that were owned pre-conversion), which means that such corporation pre-conversion can never be distinguished from such corporation post-conversion.

Applying the foregoing Pennsylvania law of divisions and conversions to the instant matter, the division of BGHI effected by the Hospital Reorganization did not thereby result in the cessation of the existence of BGHI because ¶ 7 of the effecting Plan of Division expressly provides that BGHI was to survive such division. Because such division of BGHI did not terminate the existence of BGHI, and since the conversion of BGHI effected by the Hospital Reorganization could not, by itself, have terminated the existence of BGHI, BGHI's existence was unaffected by the Hospital Reorganization. Consequently, the Debtor (i.e., BGHI post-Hospital Reorganization) is, as the Debtor argues, not legally distinct from BGHI pre-Hospital Reorganization. Because the Debtor (i.e., BGHI post-Hospital Reorganization) is not legally distinct from BGHI pre-Hospital Reorganization, the Court shall henceforth re-

fer to BGHI, be it pre- or post-Hospital Reorganization, as simply the Debtor.

Furthermore, as both the surviving, and thus a resulting, corporation in the division, and also the corporation that was the subject of the conversion, that was effected by the Hospital Reorganization, and because the Plan of Division that effected such division expressly vested in the Debtor ownership of all assets that it owned pre-Hospital Reorganization save for the Debtor's realty and $50,000 in cash, the Debtor owns all documents that it owned pre-Hospital Reorganization, as well as everything that passes with them. *See* 15 Pa.C.S.A. § 5957(b)(1)(i) (Purdon's 2008) (subsequent to a division, assets are divided among the resulting corporations according to the plan of division unless such plan is silent on the matter, in which case assets are divided "per capita among the resulting corporations, as tenants in common"); 15 Pa.C.S.A. § 5966 (Purdon's 2008) ("Upon the conversion becoming effective, . . . and, as such business corporation, it shall continue to be entitled to all assets theretofore pertaining to it as a nonprofit corporation"). Because TRA represented the Debtor pre-Hospital Reorganization with respect to the Hospital Reorganization, and since the TRA Documents relate to such matter, the TRA Documents constitute documents that the Debtor owned pre-Hospital Reorganization. Consequently, the Debtor owns, as does BPCI (as set forth at the beginning of the instant analysis), the TRA Documents and all else that passes with them.

Therefore, the TRA Documents, as well as the attorney-client privilege and all other privileges and protections that accompany the TRA Documents, are jointly owned by the Debtor and BPCI.[1]

## II.

█ Also with respect to the TRA Documents, the Debtor and BPCI presently assert against each other an attorney-client privilege.

█ Because the Debtor and BPCI are, or at least were, joint clients of TRA with respect to TRA's representation of them relative to the Hospital Reorganization, and since the TRA Documents relate to the Hospital Reorganization, which matter is one in which the Debtor and BPCI had a common interest and about which they collectively consulted TRA,[2] neither the Debtor nor BPCI could have used against each other, or can so use now or in the future, an attorney-client privilege either

---

1. The Court notes, as an aside, that, even if BPCI had been correct that the Debtor (i.e., BGHI post-Hospital Reorganization) is legally distinct from BGHI pre-Hospital Reorganization, such would not have served to change the Court's conclusion that the Debtor owns with BPCI the TRA Documents and all else that passes with them. The Court so holds because (a) the Debtor, in any event, was a resulting corporation in the division, and also the corporation that was the subject of the conversion, that was effected by the Hospital Reorganization, (b) the Plan of Division that effected such division expressly vested in the Debtor ownership of all assets that BGHI owned pre-Hospital Reorganization save for BGHI's realty and $50,000 in cash, (c) the Debtor thus owns all documents that BGHI owned pre-Hospital Reorganization, as well as everything that passes with them, *see* 15 Pa.C.S.A. § 5957(b)(1)(i); 15 Pa.C.S.A. § 5966, and (d) the TRA Documents constitute documents that BGHI owned pre-Hospital Reorganization.

2. The Court understands TRA to perhaps contend that the Debtor was never one of its clients, that TRA instead only represented BGHI pre-Hospital Reorganization, which latter entity is legally distinct from the Debtor. As set forth above, the Court holds that the Debtor is not legally distinct from BGHI pre-Hospital Reorganization. As a consequence thereof, TRA represented the Debtor, albeit perhaps unknowingly.

to restrict access to, or to preclude the use of, the TRA Documents. Such is the case because:

> The attorney-client privilege protects joint client communications from discovery by third parties. Among the joint clients, however, the privilege may not be used either to restrict access to, or to preclude use of communications between the attorney and the clients that relate to those matters in which they had a common interest and about which they collectively consulted the attorney.

1 Paul R. Rice, *Attorney–Client Privilege in the United States* § 4:33 (2nd ed.2007) (stating federal law regarding attorney-client privilege and citing, *inter alia, La-Rocca v. State Farm Mutual Auto. Insurance Co.,* 47 F.R.D. 278, 280 (W.D.Pa. 1969)); *see also* Paul R. Rice & Dave Martella, *Attorney–Client Privilege: State Law Pennsylvania* § 4:33 (2007) (stating Pennsylvania law regarding attorney-client privilege to the same effect as federal law regarding such subject, and citing, *inter alia, Loutzenhiser v. Doddo,* 436 Pa. 512, 260 A.2d 745, 748 (1970)).[3]

Furthermore, that the Plan Administrator brings the instant adversary proceeding (as well as other actions) against BPCI on the Debtor's behalf does not operate such that BPCI can use against the Plan Administrator an attorney-client privilege vis-a-vis the TRA Documents although BPCI could not do so against the Debtor.

The Court so rules because language in the Plan makes clear that (a) all actions against BPCI remain owned by the Debtor, *see* Plan ¶ 13.1(a) ("title to the property of the Estate shall vest and/or re-vest in the Debtor"), ¶ 1.38 (" 'Estate Property' shall mean the Estate Litigation and the Assets") & ¶ 1.37 (defining Estate Litigation to mean, *inter alia,* actions of the type brought against BPCI), and (b) the Plan Administrator acts on behalf, rather than instead, of the Debtor, *see* Plan ¶ 13.5 ("the … Plan Administrator, *on account of the Debtor,* shall have the exclusive right to enforce any and all Estate Litigation against any person"—emphasis added).

Therefore, neither the Debtor (or the Plan Administrator on the Debtor's behalf) nor BPCI may, as against each other, raise an attorney-client privilege with respect to the TRA Documents, which means that neither such party may, as to each other, so restrict access to, or preclude the use of, the TRA Documents.

### III.

Because the TRA Documents are jointly owned by the Debtor and BPCI at the present time, and since neither party may, as against each other, raise an attorney-client privilege with respect to such documents so as to restrict access to, or preclude the use of, the same by the other, the Debtor and BPCI both have a right to immediate and unfettered access to the

---

**3.** The Court notes, as an aside, that, even if the Debtor had not been a client of TRA, which would have been the case if, for instance, BPCI had been correct that the Debtor (i.e., BGHI post-Hospital Reorganization) is legally distinct from BGHI pre-Hospital Reorganization, such would not have served to change the Court's conclusion that BPCI could not have asserted, and cannot now or henceforth assert, against the Debtor an attorney-client privilege with respect to the TRA Documents. The Court so holds because (a) the Debtor, in any event, as set forth *supra* at footnote 1, owned the TRA Documents, as well as everything that passes with them, and (b) part of what passed with the TRA Documents to the Debtor from BGHI pre-Hospital Reorganization was BGHI pre-Hospital Reorganization's protective right that BPCI not be able to assert against it an attorney-client privilege with respect to the TRA Documents, which protective right flows from the fact that BGHI pre-Hospital Reorganization was indisputably (i) a client of TRA, and (ii) a joint client, along with BPCI, of TRA with respect to the TRA Documents.

TRA Documents. Such access, if it's effectuation cannot be consensually agreed to by the Debtor and BPCI, shall than be effected by (a) the copying of the TRA Documents so that two copies of each of the TRA Documents then exist, with one copy to be possessed by each party, and (b) a sharing of the cost of such copying, one-half of such cost to be borne by each party.

## IV.

The Debtor, in its Motion to Compel, also seeks a determination that it is the rightful owner, and then seeks a turnover as well, of (a) documents that it owned prior to the Hospital Reorganization other than the TRA Documents (hereafter "the Other Documents"), and (b) the attorney-client privilege and all other privileges and protections that accompany the Other Documents.

The Court, on the basis of the above analysis, can, and does, readily hold that the Other Documents (and everything that passes with them) are now owned by the Debtor. However, the Court does not deem it prudent at this time to direct a turnover of documents other than the TRA Documents given that (a) certain of the Other Documents, although owned by the Debtor prior to the Hospital Reorganization, might also have been owned jointly with, for instance, BPCI, any of the other Defendants, or some other third party, in which event something other than a simple turnover directive is called for, and (b) the Court presently has no way of ascertaining whether what the Debtor might consider to be one or several of the Other Documents might instead not have been owned at all, in the first instance, by the Debtor prior to the Hospital Reorganization (i.e., such document might instead be owned solely, for instance, by BPCI, any of the other Defendants, or some other third party).

## V.

For all of the reasons stated above, the Court shall issue an order—which order is attached to the instant Memorandum—that is in the form as set forth on pages 2–3 above.

### ORDER OF COURT

AND NOW, this **17th day of January, 2008**, for the reasons set forth in the accompanying Memorandum of the same date, it is **hereby ORDERED, ADJUDGED, AND DECREED** that:

(a) the documents and/or information that are the subject of the Debtor's Motion to Compel *and* which are presently possessed by Thorp Reed & Armstrong LLP (hereafter "TRA") (hereafter "the TRA Documents"), as well as the attorney-client privilege and all other privileges and protections that accompany the TRA Documents, are jointly owned by the instant Debtor and Brownsville Property Corporation, Inc., one of the Defendants (hereafter "BPCI");

(b) neither the Debtor nor BPCI may, as against each other, raise the attorney-client privilege with respect to any of the TRA Documents, which means that neither such party may, as to each other, so restrict access to, or preclude the use of, the TRA Documents;

(c) the Debtor and BPCI thus both have a right to immediate and unfettered access to the TRA Documents, which access, if it's effectuation cannot be consensually agreed to by the Debtor and BPCI, shall than be effected by (i) the copying of the TRA Documents so that two copies of each of the TRA Documents then exist, with one copy to be possessed by each party, and (ii) a sharing of the cost of such copy-

ing, one-half of such cost to be borne by each party;

(d) the Debtor is the rightful, but not necessarily the sole, owner of (i) documents and/or information that it owned prior to the Hospital Reorganization (as that term is defined at page 3 in the accompanying Memorandum) other than the TRA Documents (hereafter "the Other Documents"), and (ii) the attorney-client privilege and all other privileges and protections that accompany the Other Documents; and

(e) the Debtor's request for turnover of any document other than the TRA Documents is denied without prejudice.